UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

TCP RYAN STREET, LLC

VERSUS

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY AND ZURICH
AMERICAN INSURANCE COMPANY

CIVIL ACTION NO:
    2:22-cv-02022-JDC-TPL

JUDGE JAMES D. CAIN, JR.

MAGISTRATE JUDGE
THOMAS P. LEBLANC

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S
OPPOSITION TO TCP RYAN STREET, LLC'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT AND REPLY IN SUPPORT OF
<u>WESTCHESTER'S MOTION FOR SUMMARY JUDGMENT</u>**

John W. Joyce, 27525
Laurence D. LeSueur, 35206
Robert Waldrup, 37345
Alexandra L. Gjertson, 39893
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana  70112
Telephone:  504-589-9700
Facsimile:  504-589-9701
jjoyce@barrassousdin.com
llesueur@barrassousdin.com
rwaldrup@barrassousdin.com
agjertson@barrassousdin.com

*Attorneys for Westchester Surplus Lines
Insurance Company*

1

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

    I.    Plaintiff is not a named insured or additional insured and therefore has no right to coverage under Westchester's policy ......................................................2

        A.    Plaintiff's argument that it is entitled to coverage because its lease agreement required MRI to name it as the insured fails because the Policy unambiguously requires that any named insured or additional insured be added by endorsement pursuant to the insured's written request ................2

        B.    Westchester's Policy is consistent with Louisiana law ...............................5

        C.    MRI—not Westchester—is the party that breached its contractual obligations to Plaintiff ................................................................................7

    II.    Plaintiff has not shown it is entitled to coverage as a third-party beneficiary of Westchester's Policy ................................................................................................10

    III.    Without a valid underlying claim for breach of contract, Plaintiff's bad-faith claim fails as a matter of law ........................................................................................11

CONCLUSION ....................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allday v. Newpark Square I Office Condominium Association, Inc.*,
  20-358 (La. App. 5 Cir. 8/18/21), 327 So. 3d 566 .................................................................. 10

*Bowers v. United States*,
  226 F.2d 424 (5th Cir. 1955) ................................................................................................. 6, 7

*Calogero v. Safeway Insurance Company of Louisiana*,
  99-1625 (La. 1/19/00), 753 So. 2d 170 ..................................................................................... 11

*Gebreyesus v. F.C. Schaffer & Associates, Inc.*,
  204 F.3d 639 (5th Cir. 2000) ..................................................................................................... 4

*Good v. Saia*,
  2007-0145 (La. App. 4 Cir. 9/12/07), 967 So. 2d 1161 ............................................................. 8

*Haddad v. Elkhateeb*,
  2010-0214 (La. App. 4 Cir. 8/11/10), 46 So. 3d 244 ................................................................. 6

*Hanover Insurance Co. v. Superior Labor Services, Inc.*,
  No. 11-2375, 2017 WL 3621242 (E.D. La. Aug. 21, 2017) .................................................. 4, 5

*Haynes v. Chubb & Sons, Inc.*,
  No. 20-0636, 2022 WL 15045434 (W.D. La. Oct. 25, 2022) .................................................. 11

*Henderson v. Tickles*,
  99-519 (La. App. 5 Cir. 11/10/99), 749 So. 2d 32 ..................................................................... 8

*Johnson v. American Security Insurance Co.*,
  650 F. Supp. 3d 483 (E.D. La. 2023) ...................................................................................... 10

*Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co.*,
  630 So. 2d 759 (La. 1994) ......................................................................................................... 2

*Ledbetter v. Concord General Corp.*,
  95-809 (La. 1/6/96), 655 So. 2d 1166 ....................................................................................... 6

*Lloyds of London v. Transcontinental Gas Pipe Line Corp.*,
  101 F.3d 425 (5th Cir. 1996) ..................................................................................................... 4

*Lobell v. Rosenberg*,
  2015-0247 (La. 10/14/15), 186 So. 3d 83 .................................................................................. 8

*Maroulis v. Entergy Louisiana, LLC*,
  20-298 (La. App. 5 Cir. 2/10/21), 351 So. 3d 372 .................................................................... 5

*Miller v. Superior Shipyard & Fabrication, Inc.*,
  2001-2907 (La. App. 1 Cir. 8/20/03), 859 So. 2d 159 ............................................................ 5, 6

*Q Clothier New Orleans LLC v. Twin City Fire Insurance Co.*,
  535 F. Supp. 3d 574 (E.D. La. 2021) ....................................................................................... 11

*Reed v. State Farm Mutual Automobile Insurance Co.*,
  2003-0107 (La. 10/21/03), 857 So. 2d 1012 ............................................................................ 11

*Savoy v. Kelly-Dixon*,
  2022-318 (La. App. 3 Cir. 11/23/22), 353 So. 3d 981 ............................................................... 5

*Williams v. Certain Underwriters at Lloyd's of London*,
  398 F. App'x 44 (5th Cir. 2010) ............................................................................................... 10

**Statutes**

Louisiana Civil Code article 2050 ................................................................................................. 2

Louisiana Revised Statute 22:1892 .............................................................................................. 11

Louisiana Revised Statute 22:1973 .............................................................................................. 11

**Other Authorities**

COUCH ON INSURANCE ............................................................................................................. 4, 5

Defendant Westchester Surplus Lines Insurance Company ("Westchester") submits the following reply in support of its motion for summary judgment and opposition to plaintiff TCP Ryan Street, LLC's cross-motion for partial summary judgment.

## INTRODUCTION

Plaintiff is not and never was an insured under Westchester's insurance policy (the "Policy,") and Plaintiff's opposition and cross-motion for summary judgment fail to raise an issue of fact otherwise. Plaintiff does not dispute that it is not named or listed anywhere in Westchester's Policy or its endorsements. Instead, Plaintiff argues that because its lease agreement with Westchester's insured, MRI Heritage Brand, Inc. ("MRI"), required MRI to obtain insurance naming Plaintiff as the insured, it is entitled to coverage under Westchester's Policy. But language in a lease to which Westchester is not a party is not sufficient to create coverage where there is none. Westchester's Policy unambiguously requires that named and additional insureds be added to the Policy pursuant to written request from the insured and by an endorsement. And undisputed evidence demonstrates that Westchester's insured MRI never made any such written request, and that no such endorsement was ever added to the Policy.

The futility of Plaintiff's attempt to seek coverage under a Policy in which it is nowhere named is highlighted by the case law Plaintiff cites, apparently in support of its argument—one such case considering policy language in direct contradiction to the language at issue here, and another considering the text of the Agricultural Adjustment Act. Plaintiff cites no authority supporting its argument that it is entitled to coverage because none exists. Plaintiff claims it is owed coverage because MRI "was obligated" to obtain insurance for its property and name Plaintiff as the insured—but obligated or not, MRI failed to do so. As a result, Plaintiff is not named anywhere in Westchester's Policy and thus has no right to coverage. And Plaintiff does

1

not dispute that if it has no claim for coverage, its claim for bad-faith penalties must likewise be dismissed. Westchester therefore respectfully requests that this Court dismiss all Plaintiff's claims against it.

## ARGUMENT

I. **Plaintiff is not a named insured or additional insured and therefore has no right to coverage under Westchester's Policy.**

    A. **Plaintiff's argument that it is entitled to coverage because its lease agreement required MRI to name it as the insured fails because the Policy unambiguously requires that any named insured or additional insured be added by endorsement pursuant to the insured's written request.**

Westchester's Policy unambiguously provides that no entity is a named or additional insured under the Policy unless it is endorsed to that effect. Critically, the Policy also requires that "[MRI] must submit a separate written request if an endorsement or policy change (*including but not limited to adding additional insureds*, loss payees and mortgagees . . .) is requested."[1] Louisiana law requires that insurance policies be interpreted as a whole and mandates that "one policy provision is not to be construed separately at the expense of disregarding other policy provisions."[2] Taken together, the Policy's named and additional insured provisions, both of which require that the Policy be endorsed to add any additional covered entities by endorsement, and the written request provision, which requires that MRI request any additional insured coverage in writing, make clear that **Plaintiff must have been added to the Policy by an endorsement requested in writing by MRI to have a right to coverage as a named insured or additional insured.** And it is undisputed that MRI never submitted any such written request, and that the Policy was never endorsed to that effect.

---

[1]     *See* R. Doc. 22-3 (Westchester's Policy), at 1.

[2]     *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994) (citing La. Civ. Code art. 2050).

Plaintiff's argument that its lease agreement with MRI somehow resulted in the Policy being "automatically" endorsed to include Plaintiff is unsupported by any authority and is in direct contradiction to the language of the Policy itself.[3] In conjunction with the named insured and additional insured provisions, the Policy also plainly requires the insured to submit a written request to add an additional insured by endorsement.[4] And the additional insured provision on which Plaintiff relies expressly provides that the policy will be endorsed "*subject to all other terms, conditions, limits of liability and exclusions of this Policy*."[5] Plaintiff cannot avoid this clear Policy language merely because it is inconvenient to its position. Plaintiff's vain attempt to avoid the import of this requirement by arguing that it is not part of the Policy because it is contained in Policy's cover page, which binds coverage,[6] is likewise refuted by the text of the Policy itself: The Policy defines itself to include "this policy of insurance, *together with all materials included with any submission*, the Declarations, and all endorsements and schedules."[7] The cover page binding coverage is therefore undisputedly part of the Policy, and thus the Policy unambiguously requires that the insured submit a written request to add any additional insured by endorsement. MRI never submitted any such written request, and the Policy was therefore never endorsed to cover Plaintiff.

Plaintiff devotes much of its opposition to reciting rules of construction to the effect that ambiguous insurance policy provisions must be construed in favor of the insured.[8] The relevant

---

[3] R. Doc. 24-1 (Plaintiff's Opposition), at 16.

[4] R. Doc. 22-3 (Westchester's Policy), at 1.

[5] *Id.* at 11.

[6] R. Doc. 24-1 (Plaintiff's Opposition), at 14. Plaintiff's characterization of this binder of coverage as a "cover letter" is inaccurate. Nevertheless, as a "material[] included with [the] submission," it is part of Westchester's Policy regardless how Plaintiff characterizes it.

[7] *See* Doc. 22-3 (Westchester's Policy), at 52.

[8] R. Doc. 24-1 (Plaintiff's Opposition), at 16–17.

policy provisions, however, are not ambiguous—they expressly require that named and additional insureds be added to the Policy by an endorsement in writing. And under Louisiana law, "[t]he fact that one party can, in hindsight, create a dispute about the meaning of a contractual provision does not render the provision ambiguous."[9] Even more significantly, that rule is inapplicable here because *Plaintiff is not the insured*. Westchester does not dispute that under Louisiana law, any ambiguous provisions should be construed in favor of its insured, MRI. But the provisions at issue are not ambiguous, and Plaintiff is not its insured. Plaintiff also argues that it is entitled to coverage because an ACCORD form lists Plaintiff as an "Additional Insured."[10] But, in language cited by Plaintiff itself, the Policy expressly provides that such "Certificates of Insurance do not amend, modify, or alter any term or condition of this Policy."[11] And Westchester's Policy is consistent with Louisiana law, which recognizes that "a certificate of insurance cannot contradict the terms of a policy"[12] and that entities cannot be made additional insureds under insurance policies based on the contents of a certificate of insurance.[13]

Westchester's Policy provides that no entity is a named insured or additional insured unless it is added to the Policy by endorsement and by written request. It is therefore not true, as Plaintiff claims, that the Policy's named and additional insured provisions required "no further

---

[9] *Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996); *Gebreyesus v. F.C. Schaffer & Associates, Inc.*, 204 F.3d 639, 643 (5th Cir. 2000) ("Just as a party cannot create an ambiguity where none exists, a court cannot create contractual obligations where the language of the contract clearly expresses the party's intent." (internal quotation marks omitted)).

[10] R. Doc. 24-1 (Plaintiff's Opposition), at 6.

[11] *See* Doc. 22-3 (Westchester's Policy), at 11.

[12] *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, No. 11-2375, 2017 WL 3621242, at *4 (E.D. La. Aug. 21, 2017) (quoting 3 JORDAN R. PLITT, STEVEN PLITT, DANIEL MALDONADO, AND JOSHUA D. ROGERS, COUCH ON INSURANCE § 40:31 (2017)).

[13] *See id.*; *Advantage Roofing & Constr. of La., Inc. v. Landmark Am. Ins. Co.*, No. 16-677, 2018 WL1955516, at *8–10 (M.D. La. Mar. 13, 2018).

steps" from MRI other than putting Westchester on notice of a lease agreement between itself and Plaintiff.[14] In addition to such notice, MRI was required to request an endorsement in writing—and Plaintiff does not and cannot contest that MRI never made such a request, and that the Policy was never endorsed to provide Plaintiff with that status. Plaintiff therefore has no right to coverage under Westchester's Policy.

### B. Westchester's Policy is consistent with Louisiana law.

The language of Westchester's Policy is consistent with Louisiana law. Indeed, courts applying Louisiana law have routinely held that entities that are *not* designated as additional insureds under endorsements to insurance policies do not otherwise enjoy named or additional insured status.[15] This is in accordance with "the general rule . . . that a policy issued to one party must *explicitly name* the other party as an insured in order for coverage to extend to both [parties'] interests."[16] To that end, the leading treatise on insurance law provides that "[a] landlord is a coinsured under a tenant's fire [property] insurance policy *only if the policy expressly so provides*."[17]

The case law cited by Plaintiff is unavailing. Plaintiff relies heavily on *Miller v. Superior Shipyard & Fabrication, Inc.*, a Louisiana First Circuit Court of Appeal case considering an

---

[14] R. Doc. 24-1 (Plaintiff's Opposition), at 16.

[15] *See, e.g.*, *Advantage Roofing*, No. 16-677, 2018 WL1955516, at *7–10 (holding that plaintiff was not an additional insured under insurance policy where it failed to mee the policy's definition of "insured"); *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, No. 11-2375, 2017 WL 3621242, at *3 (E.D. La. Aug. 21, 2017) (noting that entity was not a "person insured" under insurance policy because the policy "d[id] not contain an additional insured endorsement to provide [the entity] with additional insured status"); *Savoy v. Kelly-Dixon*, 2022-318, pp. 5–7 (La. App. 3 Cir. 11/23/22), 353 So. 3d 981, 986–87 (noting that entity was not an additional insured under policy where the terms of the additional insured endorsement did not apply to entity); *Maroulis v. Entergy La., LLC*, 20-298, pp. 3-4 (La. App. 5 Cir. 2/10/21), 351 So. 3d 372, 375 (same).

[16] 10A JORDAN R. PLITT, STEVEN PLITT, DANIEL MALDONADO & JOSHUA D. ROGERS, COUCH ON INSURANCE § 148:9 (3d ed. 2023) (emphasis added).

[17] *Id.* (emphasis added).

additional insured endorsement.[18] But *Miller* is inapposite. First, though Plaintiff refers to the relevant provision in Westchester's Policy as the "Additional Insured Endorsement,"[19] this label is misleading. Unlike the endorsement at issue in *Miller*, the provision in Westchester's Policy is not a separate endorsement, and instead is part of the Policy's coverage form.[20] And critically, the language in the endorsement in *Miller* is directly contrary to that contained in Westchester's Policy. The *Miller* endorsement provides that "if required by written contract, any person, firm or organization *is included as an Additional Insured*."[21] The Westchester Policy, on the other hand, explicitly requires that any entity be added *by endorsement* **and** *by written request* to enjoy named insured or additional insured status. The language in the two policies could not be more different, and thus *Miller* is of no relevance here.

The other authorities cited by Plaintiff are equally unpersuasive. Plaintiff cites *Ledbetter v. Concord General Corp.* in a half-hearted attempt to argue that it is entitled to coverage by virtue of an "insurable interest" in the Property.[22] But Louisiana law is clear that "[a] person who is neither a party to the insurance contract nor one for whose benefit it was written is *not* entitled to a share of the insurance proceeds by the mere fact that he has an in insurable interest in the property."[23] Plaintiff also cites *Bowers v. United States* for the purported proposition that the

---

[18] R. Doc. 24-1 (Plaintiff's Opposition), at 14–15 (citing *Miller v. Superior Shipyard & Fabrication, Inc.*, 2001-2907 (La. App. 1 Cir. 8/20/03), 859 So. 2d 159).

[19] *Id.* at 10.

[20] *See* Doc. 22-3 (Westchester's Policy), at 11.

[21] *Miller*, 2001-2907, pp. 5–6, 859 So. 2d at 163.

[22] R. Doc. 24-1 (Plaintiff's Opposition), at 17 (citing *Ledbetter v. Concord Gen. Corp.*, 95-809 (La. 1/6/96), 655 So. 2d 1166).

[23] *See Haddad v. Elkhateeb*, 2010-0214, p. 11 (La. App. 4 Cir. 8/11/10), 46 So. 3d 244, 253 (emphasis added).

Policy's language "creates an irrebuttable presumption of law."[24] But *Bowers*, a case arising from the Middle District of Alabama and interpreting the Agricultural Adjustment Act, has no bearing on this Louisiana insurance coverage dispute.[25]

Plaintiff cites no applicable case law in support of its position because no such law exists. Westchester's Policy's requirement that named and additional insureds be added by endorsement is both unambiguous and supported by Louisiana law, and it should be enforced here to dismiss Plaintiff's coverage claim.

      **C.    MRI—not Westchester—is the party that breached its contractual obligations to Plaintiff.**

Plaintiff argues that its lease with MRI "obligated MRI . . . to maintain commercial property insurance on the Property with the landlord TCP specifically to be named as an insured under the Policy" and "required that all insurance proceeds be made payable to TCP."[26] The problem with this argument is that Westchester is not and has never been a party to that lease. The lease agreement did not merely require that MRI obtain commercial property insurance for the Property—it specifically mandated that the insurance obtained "name only [Plaintiff] as the sole insured."[27] But MRI demonstrably breached this agreement with Plaintiff, instead procuring coverage for only itself and neglecting to inform Westchester of Plaintiff or the lease's existence until after Hurricane Laura passed.

Westchester is not a party to the lease agreement and therefore has no contractual relationship with Plaintiff. Nor is Westchester responsible for *MRI's* breaches of that lease

---

[24]    R. Doc. 24-1 (Plaintiff's Opposition), at 16 (citing *Bowers v. United States*, 226 F.2d 424 (5th Cir. 1955).

[25]    *See Bowers*, 226 F.2d 424.

[26]    R. Doc. 24-1 (Plaintiff's Opposition), at 6.

[27]    R. Doc. 22-8 (Lease Agreement), at 15.

agreement. MRI, not Westchester, is the party liable for its failure to name Plaintiff as an insured under Westchester's Policy. Indeed, Louisiana courts have recognized that a tenant is liable for breach of contract for failure to procure insurance required by a lease agreement.[28] Further, though the lease expressly provides for remedies of MRI's breaches, Plaintiff chose not to pursue any remedy from MRI and now instead tries to hold Westchester responsible for MRI's failures, even though it is not named as an insured anywhere in Westchester's Policy. In *Henderson v. Tickles*, the court held under similar circumstances that a landlord waived its right to be listed as an additional insured in its tenant's insurance policy when the landlord learned that the tenant breached a lease obligation requiring it to list the landlord as an additional insured, but the landlord never demanded compliance after learning of the breach.[29]

Here, Plaintiff has been aware of MRI's breaches—and the resulting consequences—for *years*. By December 2020, for example, Plaintiff was aware that MRI had breached the lease's requirement to obtain insurance with a maximum $5,000 deductible and had accordingly demanded from MRI payment in the amount of $245,000, representing the difference between the minimum deductible required by Westchester's Policy and the maximum deductible allowed by the lease.[30] And by January 2021 at the latest, Plaintiff was made aware that it was not a named insured, additional insured, or loss payee under Westchester's Policy, and was therefore not entitled to receive any payments from Westchester.

---

[28] *See Good v. Saia*, 2007-0145, pp. 24–30 (La. App. 4 Cir. 9/12/07), 967 So. 2d 1161, 1174–1177 (holding that tenants' breach of lease agreement in failing to maintain insurance on leased premises was a substantial breach meriting eviction); *see also Lobell v. Rosenberg*, 2015-0247, pp. 11–12 (La. 10/14/15), 186 So. 3d 83, 90–91 (affirming trial court's finding that property owners had grounds to terminate lease based on tenant's breaches of the parties' agreement, including the tenant's failure to maintain appropriate hazard insurance).

[29] 99-519 (La. App. 5 Cir. 11/10/99), 749 So. 2d 32.

[30] *See* R. Doc. 22-21 (Dec. 2020 Emails between D. Hipskind and R. McNeely) (noting that MRI "mailed out" a check for $245,000 "to make up the difference in the actual deductible").

Though Plaintiff protests that it first became aware of Westchester's coverage position after litigation commenced, at the mediation required by this Court's case management order,[31] this claim is belied by the evidence. MRI's broker asked Westchester in November 2020—nearly four years ago—whether payments for damage to the Property could be made payable to Plaintiff.[32] Westchester promptly denied that request because MRI was the only insured under the Policy, and the Policy was never endorsed to add Plaintiff as a named insured, additional insured, or loss payee.[33] MRI agreed with Westchester's assessment, its broker confirmed to Westchester that "[p]ayment will be made to MRI and they will forward funds to [Plaintiff],"[34] and Westchester subsequently issued all payments for the damage to the property to MRI.[35] Westchester therefore made clear that Plaintiff was not an insured (or even a loss payee) under its Policy years ago. Neither MRI nor Plaintiff ever disputed Westchester's position during claims adjustment or argued otherwise, until Plaintiff initiated this litigation months after Westchester resolved and closed MRI's claim and *after* Plaintiff tore down its Property.

The fact remains that Westchester's Policy unambiguously requires that any named insured or additional insured not identified in the Policy's declarations be added to the Policy by written request and endorsement. The record demonstrates that MRI never submitted a written request and the Policy was never endorsed to add Plaintiff as an insured, and Plaintiff is therefore not an insured under Westchester's Policy. Plaintiff's attempt to recover from Westchester for

---

[31] R. Doc. 24-1 (Plaintiff's Opposition), at 7.

[32] R. Doc. 22-9 (Nov. 18, 2020 Email from D. Gill), at 2.

[33] *See* R. Doc. 22-10 (Jan. 8, 2021 Email from S. Fiessinger), at 2 (noting that Domingo [Gill of Westchester] indicated policy is not endorsed to cut separate check payable to Landlord").

[34] R. Doc. 22-11 (Jan. 8, 2021 Email from G. Oczkowski), at 1.

[35] *See, e.g.*, R. Doc. 22-12 (July 9, 2021 Email from D. Gill), at 1.

MRI's breaches of its lease agreement—breaches which Plaintiff apparently chose not to pursue—cannot create coverage years after the fact where there is none.

**II.     Plaintiff has not shown it is entitled to coverage as a third-party beneficiary of Westchester's Policy.**

Nor is Plaintiff entitled to coverage as a third-party beneficiary of Westchester's Policy. Under Louisiana law, if a plaintiff is not a party to an insurance policy, it can avail itself of the benefits of the policy as a third-party beneficiary only if the policy "manifests a clear intention to benefit the third party."[36] In its opposition, Plaintiff does not even attempt to argue that the Policy "manifests a clear intention to benefit" Plaintiff, nor can it. The plain language of the Policy provides benefits and rights to only MRI as the named insured, and Plaintiff is nowhere mentioned in the Policy.[37] Louisiana law is clear that if an insurance policy "does not make manifestly clear that a benefit is owed to" a third party, then the third party has no right to coverage.[38] Plaintiff has not pointed to any provision of the Policy manifesting an intent to benefit any entity other than MRI, and thus fails to establish that it is a third-party beneficiary of the Policy. Plaintiff's claim under Westchester's Policy thus fails as a matter of law.

---

[36]     *See Allday v. Newpark Square I Office Condominium Association, Inc.*, 20-358 (La. App. 5 Cir. 8/18/21), 327 So. 3d 566, 574 ("Because ACG was not a party to the contract, it can only avail itself of the benefit of the condominium agreement between Newpark and the individual unit owners, if it is a third party beneficiary."); *see also Johnson v. Am. Sec. Ins. Co.*, 650 F. Supp. 3d 483, 488 (E.D. La. 2023) ("[I]n order to state a claim for breach of an insurance policy, a plaintiff must be either a named insured, an additional named insured, or an intended third-party beneficiary of the policy.").

[37]     *See* Doc. 22-3 (Westchester's Policy), at WESTCHESTER 3, 11 (listing MRI as the sole named insured and providing that benefits will be paid directly to MRI unless another entity is added to the Policy's coverage by endorsement).

[38]     *Johnson v. Am. Sec. Ins. Co.*, 650 F. Supp. 3d 483, 488–489 (E.D. La. 2023) (holding that plaintiff property owner failed to establish he was a third-party beneficiary of the policy where the policy did not state any intent to benefit the plaintiff); *see also Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44, 48–49 (5th Cir. 2010) (holding that homeowners failed to show they were entitled to coverage where the policy stated that benefits would be paid directly to the mortgagee as the sole insured, and thus "the language in the Policy f[ell] well below the requisite finding of a 'manifestly clear stipulation'").

### III. Without a valid underlying claim for breach of contract, Plaintiff's bad-faith claim fails as a matter of law.

Because Plaintiff's breach-of-contract claim fails as a matter of law, Plaintiff's bad-faith claim must also be dismissed. Plaintiff does not contest this or move for summary judgment on its claims under La. R.S. 22:1892 and 22:1973; instead, all it requests is a declaration that it is "entitled to pursue its . . . bad-faith claims against Westchester" if its coverage claim is not dismissed. Well-established Louisiana law requires that a plaintiff first have a valid underlying claim for insurance coverage to recover under La. R.S. 22:1892 and 22:1973.[39] Where a plaintiff has "no 'valid underlying claim,' . . . [its] claims for statutory bad faith are [appropriately] dismissed with prejudice."[40] Because Plaintiff has no valid claim for coverage under Westchester's Policy, its bad-faith claim must therefore be dismissed. Further, under Louisiana law, "[w]here the insurer has legitimate doubts about coverage, the insurer has the right to litigate these questionable claims without being subjected to damages and penalties."[41] In other words, the law prohibits imposing bad-faith penalties on an insurer like Westchester that has a "reasonable basis to defend the claims and acts in good-faith reliance on that defense."[42] Plaintiff's bad-faith claims against Westchester should therefore be dismissed regardless of the validity of its underlying coverage claims.

## CONCLUSION

Record evidence and Louisiana law, undisputed by Plaintiff, prove that Westchester is not liable to Plaintiff for insurance coverage or bad faith. Plaintiff has no right to coverage under

---

[39] *See Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F. Supp. 3d 574, 588 (E.D. La. 2021).

[40] *Haynes v. Chubb & Sons, Inc.*, No. 20-0636, 2022 WL 15045434, at *4 (W.D. La. Oct. 25, 2022).

[41] *Calogero v. Safeway Ins. Co. of Louisiana*, No. 99-1625 (La. 1/19/00), 753 So. 2d 170, 173.

[42] *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107, p. 13 (La. 10/21/03), 857 So. 2d 1012, 1021.

11

Westchester's Policy because MRI never submitted a written request that the Plaintiff be added as a named insured or additional insured, and the Policy was never endorsed to that effect—Plaintiff's opposition fails to prove otherwise. This Court should therefore dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

/s/ *John W. Joyce*
John W. Joyce, 27525
Laurence D. LeSueur, 35206
Robert Waldrup, 37345
Alexandra L. Gjertson, 39893
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone: 504-589-9700
Facsimile: 504-589-9701
jjoyce@barrassousdin.com
llesueur@barrassousdin.com
rwaldrup@barrassousdin.com
agjertson@barrassousdin.com

*Attorneys for Westchester Surplus Lines Insurance Company*