UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| T C P RYAN STREET L L C | CASE NO. 2:22-CV-02022 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| WESTCHESTER SURPLUS LINES INSURANCE CO ET AL | MAGISTRATE JUDGE LEBLANC |

## MEMORANDUM RULING

Before the Court is Westchester Surplus Lines Insurance Company's Motion for Summary Judgment (Doc. 22) and "Plaintiff, TCP Ryan Street, LLC's Cross-Motion for Partial Summary Judgment and Opposition to Westchester's Motion for Partial Summary Judgment" (Doc. 24). At issue in both motions is whether or not Plaintiff, TCP Ryan Street, LLC ("TCP") is an additional insured and loss payee under the subject insurance policy.

## FACTUAL STATEMENT

On or about August 27, 2020, and October 9, 2020, Hurricanes Laura and Delta made landfall near Lake Charles, Louisiana causing damage to Plaintiff, TCP's property. During the relevant time period, Defendant Westchester Surplus Lines Insurance Company ("Westchester") issued a commercial insurance policy to MRI, as the named insured, and TCP, as owner of the property. leased said property to MRI Heritage Brand, Inc. "(MRI")[1] MRI, as lessee, was obligated pursuant to the lease terms to "purchase and maintain at all times during the lease term a policy of fire, extended coverage, vandalism and malicious mischief (or 'all risk') insurance coverage on all real property situated at the Leased

---
[1] Complaint, Doc. 1, ¶ 6.

Premises."[2] The Lease also required that MRI obtain coverage under a policy "nam[ing] only the Landlord and/or its designee as the sole insured" and provided that "the proceeds thereof shall be payable to Landlord or its designee."[3] Westchester is not a party to the Lease.

The Policy provides that entities in which the First Named Insured owns an interest greater than 50 percent, controls, or has the responsibility of placing the insurance provided by this Policy are also considered "named insureds" under the Policy. The Policy further provides that no entity is covered under the Policy unless Westchester has received identifying information for the entity during the application or submission process or the entity is added by endorsement:

> "Named Insured" means the First Named Insured and any Entity in which the First Named Insured owns an interest of more than 50 percent, during the Policy Period, controls during the Policy Period, or has the responsibility of placing the insurance provided by this Policy during the Policy Period. No Entity is covered under this Policy unless the Company has received identifying information for such Entity during the application or submission process, except if such Entity is covered under "Miscellaneous Unnamed Insured Locations" or "Newly Acquired Property," or if such Entity is added by endorsement.[4]

The policy also provides:

**B. MORTGAGEES, LOSS PAYEES, AND ADDITIONAL INSUREDS**

1. Any Certificate of Insurance issued in connection with this Policy will be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate. Certificates of Insurance do not amend, modify or alter any term or condition of this Policy.

---

[2] Defendant's exhibit F, Lease Contract, ¶ 16, § 12.02.A.
[3] *Id.*
[4] Defendant's exhibit A, Policy, at 00387.

2. However, if, pursuant to a written agreement executed prior to a date of loss in question, the First Named Insured is required to add a person or entity to this Policy as an Additional Insured, Loss Payee, or Mortgagee, then this Policy will be deemed to have been endorsed accordingly, subject to all other terms, conditions, limits of liability and exclusions of this Policy. Loss to Covered Property in which such Additional Insured, Loss Payee, or Mortgagee has an interest will be adjusted with the First Named Insured and payable jointly to the First Named Insured and such Additional Insured, Loss Payee, or Mortgagee. (emphasis added).

3. Within ten (10) business days after the Company is notified of a loss which may be covered under this Policy, [5] the First Named Insured or its authorized representative will provide the Company with the identities of all persons or entities with interest in the property that is subject to the loss as well as copies of the agreements requiring such person or entity be added to this Policy as an Additional Insured, Loss Payee, or Mortgagee.

The cover letter of the policy provides in a footnote the following:

Certificates of Insurance are never recognized as endorsements or policy change requests. You must submit a separate written request if an endorsement of policy change (including but not limited to adding additional insureds, loss payees and mortgagees and/or alteration of notice requirements for cancellation) is requested. In the event a policy change is requested, the underwriter will advise if the request is acceptable to the Company.[6]

The policy also provides that "Certificates of Insurance do not amend, modify, or alter any term or condition of this Policy."[7] An ACCORD form titled "Evidence of Commercial Property Insurance" (referred to as the ACCORD Form") related to the property identifies "Zurich American Insurance Company" as the name of the company insured in the Property."[8] The ACCORD Form related to the property identifies TCP Ryan,

---

[5] *Id.*
[6] *Id.* at 377.
[7] *Id.* at 387.
[8] Defendant's exhibit T.

LLC as an additional interest and loss payee on the Policy issued to MRI Heritage Brands, Inc. as the Named Insured with a Policy Effective Date of 04/01/2020 to 04/01/2021.[9]

Immediately following Hurricane Laura, MRI submitted a notice of loss to Westchester as to the Property,[10] and Westchester assigned the claim to Engle Martin & Associates ("EMA"). On September 5 and 6th, EMA performed a preliminary inspection of the Property.[11] Because MRI informed the EMA adjuster that MRI was the tenant, EMA reported to Westchester that "it was unclear as to who is responsible for the property."[12]

On September 7, 2020, MRI provided EMA the Lease agreement relating to the Property, which provided that MRI was responsible for obtaining insurance for the Property and to name TCP as an insured and loss payee.[13] On November 18, 2021, during the adjustment of the claim, MRI requested that the structure portion of the insurance proceed be made payable to the landlord due to "an endorsement for direct pymt to the landlord of the building."[14]

Westchester denied the request based on its position that TCP was never endorsed as a named insured, additional insured, or loss payee.[15]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[9] *Id.* Plaintiff's exhibit E.
[10] Defendant's exhibit B at 00648.
[11] Defendant's exhibit D, at 00714.
[12] *Id.*
[13] Plaintiff's exhibit D.
[14] Defendant's exhibit G, Westchester at 02213.
[15] Defendant's exhibit H.

as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Here, the issue is whether or not the subject policy required a separate written request to designate TCP as an additional or named insured. Westchester argues that the cover letter that includes that requirement in a footnote is part of the policy and because MRI filed to meet the "written requirement," TCP has no claims in this lawsuit. On the other hand, TCP argues that the cover letter and associated footnote are not part of the policy, and the policy does not provide that MRI make a written request to add TCP as an additional or named insured.

Westchester relies on the policy provision that states that "this policy of insurance, together with all material included with any submission, the Declarations, and all endorsements and schedules."[16] Thus Westchester posits that the cover page is part of the policy itself.

> TCP relies on the policy language that states that:
>
> if, pursuant to a written agreement executed prior to a date of loss in question, the First Named Insured is required to add a person or entity to this Policy as an Additional Insured, Loss Payee, or Mortgagee, then this Policy will be deemed to have been endorsed accordingly, subject to all other terms, conditions, limits of liability and exclusions of this Policy.
>
> The policy then goes on to say that:
>
> Within ten (10) business days after the Company is notified of a loss which may be covered under this Policy, [17] the First Named Insured or its authorized representative will provide the Company with the identities of all persons or entities with interest in the property that is subject to the loss as well as copies of the agreements requiring such person or entity be added to this Policy as an Additional Insured, Loss Payee, or Mortgagee.[18]

---

[16] Defendants' exhibit A, p. 1.
[17] *Id.*
[18] Plaintiff's exhibit C, at 387.

First, the Court does not agree with Westchester that the cover letter on the policy is part of the terms and conditions of the policy itself. And even if it was, perhaps the alleged additional written requirement should not have been placed in a footnote, in small print, on the cover page as opposed to in the body of the policy specifically under the heading "**MORTGAGEES, LOSS PAYEES, AND ADDITIONAL INSURED**" where the terms and conditions of additional insureds are placed. Additionally, the Court questions why the need (ten days after the loss) for the Named Insured to identify the Additional Insured, if that Additional Insured had already been identified via the footnote requirement. Here, MRI provided the Lease agreement that identified the Additional Insured in compliance with Section I(B)(2) and (3) of the policy. As such, the Court finds that TCP is an additional insured under the subject policy as well as a designated payee for insurance proceeds for claims made for damage caused by Hurricanes Laura and Delta and furthermore TCP's status as an additional insured allows it to pursue breach of contract and bad faith claims.

## CONCLUSION

For the reasons explained herein, the Court will deny Westchester Surplus Lines Insurance Company's Motion for Summary Judgment (Doc. 22) and grant Plaintiff, TCP Ryan Street, LLC's Cross-Motion for Partial Summary Judgment (Doc. 24) finding that TCP is the proper plaintiff in this lawsuit, as an additional insured and payee.

**THUS DONE AND SIGNED** in Chamber on this 16th day of July, 2024.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE